# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

SAMUEL NISWONGER,                                    Case No. 3:10-cv-377

     Plaintiff,                                      Judge Timothy S. Black

     vs.

PNC BANK CORP. AND AFFILIATES
LONG TERM DISABILITY PLAN,

     Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS (Doc. 19)

This civil action is currently before the Court on Plaintiff's motion for attorney's fees and costs (Doc. 19) and the parties' responsive memoranda (Docs. 20, 21).

## I.   BACKGROUND FACTS

The Plaintiff in this case filed an action for benefits under a Welfare Plan initiated by his former employer, PNC Bank Corp., and operated by Defendant Liberty Life Assurance Company of Boston ("Liberty").  On August 3, 2011, this Court issued an Order granting Plaintiff's motion for judgment on the administrative record (Doc. 17), and remanded the case to the plan administrator with instructions to award Plaintiff long-term disability benefits retroactive to April 21, 2010.

Plaintiff is now before the Court on a motion for attorney's fees and costs (including prejudgment interest) pursuant to Section 502(g)(2) of the Employee Retirement Income Security Act of 1074 ("ERISA"), 29 U.S.C. §1132(g)(2).

In support of the motion, Plaintiff has submitted the affidavits of attorney Joseph McDonald (Doc. 19, Ex. 2) and attorney Michael Williams (Doc. 21, Ex. 1) and an itemized listing of the attorneys' fees and costs (Doc. 19, Ex. 1).

## II.    STANDARD OF REVIEW

In most lawsuits seeking relief under ERISA, "a reasonable attorney's fee and costs are available to either party at the court's discretion." *Hardt v. Reliance Standard Life Ins.*, 130 S. Ct. 2149, 2152 (2010) (quoting 29 U.S.C. § 1132(g)(1)) (citation omitted). Although the language of the statute is silent regarding the degree of success a party must achieve in order to be eligible for an award of attorney's fees, in *Hardt*, the Supreme Court interpreted the language of § 1132(g)(1) to allow an award of attorney's fees "'in its discretion' . . . 'to either party' . . . as long as the fee claimant has achieved 'some degree of success on the merits.'" *Id*. (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983); 29 U.S.C. § 1132(g)(1)).

The Fourth Circuit's five-factor test considered in *Hardt* is identical to the *King* test utilized in this Circuit. *Compare Hardt*, 130 S.Ct. at 2155 n.1 (quoting *Quesinberry v. Life Ins. Co. of North Am.*, 987 F.2d 1017, 1029 (4th Cir. 1993) (setting out the Fourth Circuit test)) and *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d at 529 (6th Cir. 2008) (setting out the Sixth Circuit test). The Supreme Court did not, however, "foreclose the possibility that once a claimant has satisfied this requirement [some success on the merits], and thus becomes eligible for a fees award under § 1132(g)(1), a court may

consider the five factors adopted by the Court of Appeals . . . in deciding whether to award attorney's fees." *Hardt*, 130 S.Ct. at 2158 n.8. *Hardt*, therefore, adds a threshold determination to a court's analysis of a motion for fees under § 1132(g)(1). Once a court determines that a claimant has achieved "some degree of success on the merits," it may apply a factor test to determine whether to award fees.

### III. ANALYSIS OF FEE AWARD

Plaintiff's eligibility for attorney's fees and costs under § 1132(g)(1) turns on the question of whether he has achieved "some degree of success on the merits." *Hardt*, 130 S.Ct. at 2158. The Court concludes easily that Plaintiff has achieved "some degree of success on the merits." However, Plaintiff's eligibility for attorneys' fees does not automatically establish his entitlement to them. *Hardt*, 130 S.Ct. at 2158 n.8 ("[O]nce a claimant . . . becomes eligible for a fees award . . . a court may consider the five factors ... in deciding whether to award attorney's fees."). The factors of the *King* test must weigh in favor of an award of attorney's fees before a district court in this Circuit will exercise its discretion to grant such fees. *Kauffman v. Sedalia Med. Center, Inc.*, No. 2:04cv543, 2007 U.S. Dist. LEXIS 9572 at *1 (Feb. 9, 2007 S.D. Ohio).

The *King* factors are as follows: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorneys' fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and

beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions. *Gaeth*, 538 F.3d at 529. Because no single factor is determinative, the Court will consider each factor in turn. *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642-43 (6th Cir. 2006).

### 1. *Culpability or bad faith*

This Court's finding that Defendant's denial of benefits was arbitrary and capricious does not mean that the denial was made in bad faith. *Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 937 (6th Cir. 1996). Rather, "the Court considers the circumstances surrounding the denial" in order to determine the level of Defendant's culpability or bad faith. *Kauffman*, 2007 U.S. Dist. LEXIS 9572, at *1. It is important to note that culpability and bad faith are not synonymous – as is demonstrated by the disjunctive "or" in the *King* test. *Pelchant v. Unum Life Ins. Co.*, No. 3:02CV7282, 2003 U.S. Dist. LEXIS 10709, at *2 (N.D. Ohio June 25, 2006). "Culpability is merely defined as 'blameworthiness.'" *Id.* at *2 n.1 (citing Black's Law Dictionary 385 (7th ed. 1999)). Bad faith, on the other hand, has been defined by the Sixth Circuit as "arbitrary, reckless, indifferent, or intentional disregard of the interests of the person owed a duty." *Benkert v. Med. Protective Co.*, 842 F.2d 144, 149 (6th Cir. 1988).

In the context of ERISA, acts which support a finding of culpability under the five factor test include: (1) denying claims based solely on the opinion of a physician in the insurer's employ; (2) denying a claim repeatedly while ignoring substantial evidence;

(3) relying on the opinion of an employee-physician who never examined the claimant; and (4) failing to provide a reasoned explanation in support of denial. *Moon*, 461 F.3d at 643-44. In reaching its decision on the underlying case, this Court found that Defendant: (1) relied on the analysis of its employee-physician Dr. Millstein as the principal reason for denying Plaintiff's claim; (2) denied Plaintiff's claim on appeal and was unwilling to or failed to review new substantial evidence of disability; (3) relied on the opinion of employee-physician Dr. Millstein when he never examined or personally interviewed Plaintiff; and (4) failed to provide a reasoned explanation in support of the denial. Moreover, the Sixth Circuit has found that "[w]here a plan administrator engages in an inadequate review of a beneficiary's claim or otherwise acts improperly in denying benefits," the culpability aspect of the *King* test is satisfied. *Shelby County Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 377 (6th Cir. 2009).

This factor, therefore, weighs in favor of such an award.

### 2. *Defendant's ability to satisfy an award of attorney's fees*

Defendant does not contest this factor, and, therefore, it weighs in favor of such an award.

### 3. *Deterrent effect of a fee award*

The key question in analyzing this third factor is . . . whether the fee award [will] have a deterrent effect on other plan administrators." *Gaeth*, 538 F.3d at 532. The deterrent effect on other plan administrators is likely to have more significance in a case

where the defendant is highly culpable – where "deliberate misconduct is in the offing," rather than when the plan administrator has just made an "honest mistake." *Foltice*, 98 F.3d at 937.  Lack of bad faith should not impact whether a court finds fees could have a deterrent effect.  *Moon*, 461 F.3d at 645.

In the instant case, Defendant's benefits determination does fall within the category of "misconduct" rather than just an "honest mistake."  Defendant performed little initial analysis of Plaintiff's claim, relying primarily on the questionable analysis of its employee-physician, Dr. Millstein.  Additionally, on appeal, Defendant ignored the materials from Drs. Reddy, Walters, Sood, and Mr. Piniti, all of which demonstrated disability, and continued to rely on Dr. Millstein's opinion without explanation.

An award of fees in this case further confirms that insurers must perform meaningful claim reviews.  "If the only consequence of an arbitrary denial of benefits is the change of being sued and a possibility of reinstatement of benefits at some future date, insurance companies, with this strong conflict of interest, will have little incentive to adhere to their fiduciary obligations." *Plummer v. Hartford Life Ins. Co.*, No. C-3-06-94, 2007 U.S. Dist. LEXIS 488, at *6 (S.D. Ohio. Jan. 5, 2000).

Thus, this third *King* factor also weighs in favor of awarding attorney's fees.

### 4. *Conferring a common benefit on Plan participants or resolving a significant legal question under ERISA*

Plaintiff filed this case for his own benefit.  Accordingly, he has not sought to

confer a common benefit on other plan participants. *Moon*, 461 F.3d at 645.[1] However, since most cases for benefits are filed under 502(a)(1), which seeks the individual reinstatement of benefits, this factor weighs only marginally in the determination of awarding fees.

### 5. *Relative merits of the parties' positions*

Defendant cannot argue that it considered the relative weight of the medical evidence presented, when this Court found that it exhibited an "unwillingness" to analyze materials submitted. (Doc. 17 at 18). Additionally, the Court found that Defendant performed no additional medical review of Plaintiff's claim on appeal, and that the decision to deny benefits was not based "on a reasoned or rational reading of the record." (*Id.* at 19). Moreover, the Court reinstated Plaintiff's benefits in this case. Therefore, this factor favors Plaintiff and weighs in support of awarding attorney's fees.

None of the factors examined above is alone dispositive. *Foltice*, 98 F.3d at 937. The factors, do, however, inform the discretion of this Court. *Id.* at 936 ("When exercising the discretion vested in the district court by 29 U.S.C. § 1132(g)(1), we have said, the district court should consider the [*King*] factors"). On balance, four factors weigh in favor of awarding attorneys' fees. Considering these *King* factors in light of the evidence on the record, this Court awards reasonable costs and attorney's fees to Plaintiff.

---

[1] Additionally, no significant ERISA legal question has been or will be resolved by this case.

## IV.    REASONABLENESS OF FEES

The starting point for determining the amount of reasonable attorney's fees is the "lodestar" amount. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008).  This is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id*.  "Where the party seeking attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546 (1986).  This Court determines that Plaintiff is eligible for attorney's fees under 29 U.S.C. § 1132(g)(1), because he has achieved more than trivial success on the merits of his claim, and the *King* factors weigh in favor of awarding his attorney's fees.

### A.    Hours Expended

In determining the hours reasonably expended by a prevailing party's counsel,

> [t]he question is not whether a party prevailed on a particular
> motion or whether in hindsight the time expenditure was strictly
> necessary to obtain the relief requested. Rather, the standard is
> whether a reasonable attorney would have believed the work to
> be reasonably expended in pursuit of success at the point in time
> when the work was performed.

*Woolridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1173 (6th Cir. 1990).  Plaintiff submits that counsel expended 71.4 hours on this case and a paralegal expended 9.8 hours

-8-

on this case.[2]  Defendant does not expressly contest the number of hours alleged.  The

Court finds that the hours expended by the attorney are reasonable.  However, the

majority of paralegal fees appear to be duplicative.[3]  Accordingly, the Court reduces the

amount of paralegal time from 11.8 hours to 2.3 hours (reducing the amount owed for

paralegal time from $1,180.00 to $230.00).[4]

### B.    Hourly Rates

Defendant argues that the hourly rate sought by Plaintiff's counsel, Mr. McDonald,

is excessive.  In determining a reasonable hourly rate, courts are to use, as a guideline, the

prevailing market rate, defined as the rate which lawyers of comparable skill and

experience can reasonably expect to command in the venue of the court of record.  *Gonter*

*v. Hunt Valve, Co., Inc.*, 510 F.3d 610, 618 (6th Cir. 1007).[5]  Based on the evidence

before this Court: (1) Mr. McDonald is an attorney who has focused on prosecuting

---

[2]  The total attorney fees (71.4 hours x $350) and paralegal fees (9.8 hours x $100) requested (including costs of $350) is $27,740.00.

[3]  Specifically, the tasks performed on 1/3/11, 3/5/11, 3/6/11, 3/7/11, 3/25/11, 3/28/11, 3/30/11, 4/15/11, 4/18/11, 4/27/11, and 8/17/11, are duplicative of those performed by the attorney.  (Doc. 19, Ex. 1).

[4]  Accordingly, the total amount owed for attorney and paralegal fees (including costs) is reduced to $26,790.00.

[5]  In considering whether a rate is reasonable, Courts consider evidence such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984).

ERISA matters for over 7 years; (2) has been practicing law for more than 20 years (since 1991); and (3) has prosecuted over 100 long-term disability cases. (Doc. 19, Ex. 2).

Plaintiff suggests that a reasonable rate in this case is $350 per hour. The affidavits of Mr. McDonald and Mr. Williams establish that Mr. McDonald's work experience in the ERISA field justify the rate requested and further establishes that the market supports the rate requested. (Doc. 19, Ex. 2 and Doc. 21, Ex. 1). This Court finds, based on the above cited reasons, that $350.00 per hour is a reasonable rate for Mr. McDonald's legal services. *See e.g., Bowers v. Hardford Life & Accident Ins. Co.*, No. 2:09cv290, 2010 U.S. Dist. LEXIS 114663, at *16 (S.D. Ohio Oct. 19, 2010) (holding that $350 an hour was a reasonable rate in a recently decided ERISA case in this District).

## C.    Prejudgment interest

Plaintiff also requests pre-judgment interest.[6] Awards of prejudgment interest compensate a beneficiary for the lost interest value of the money that was wrongfully withheld. *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 618 (6th Cir. 1998). Prejudgment interest in intended to put the plan in the position it would have been but for the failure to properly make decisions consistent with plan provisions. *Id.*

Defendant does not contest the factors used to determine whether prejudgment interest is appropriate – only whether the factors weigh sufficiently to award those costs.

---

[6] The Sixth Circuit has "long recognized that the district court may [award prejudgment interest] at its discretion in accordance with general equitable principles." *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 616 (6th Cir. 1998). Further, "[a]wards of prejudgment interest are compensatory, not punitive, and a finding of wrongdoing is not a prerequisite to such an award." *Id.*

Based on the Court's weighing of those factors herein, the Court finds that Plaintiff is entitled to prejudgment interest. Specifically, Plaintiff was due monthly payments beginning when he became disabled under the terms of the Policy and those monthly payments have been wrongfully withheld. Therefore, Plaintiff is due prejudgment interest on those monthly payments to compensate him for the "interest value" of the monthly payments that were wrongfully withheld.[7]

**WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT**:

1.  Plaintiff's motion for attorney's fees (Doc. 19) is **GRANTED**; and

2.  Plaintiff is entitled to recover from Defendant PNC Bank Corp. and Affiliates Long Term Disability Plan **$26,440.00** in reasonable attorney's fees; and

3.  Plaintiff is entitled to recover from Defendant PNC Bank Corp. and Affiliates Long Term Disability Plan, **$350.00** in costs; and

4.  Plaintiff is also entitled to recover prejudgment and postjudgment interest. Plaintiff shall submit a draft proposed judgment entry reflecting accrued interest to date within **14 days** of the date of this Order.

**IT IS SO ORDERED.**

DATE: ___9/29/11___

_Timothy S. Black_
Timothy S. Black
United States District Judge

---

[7] Application of Ohio's prejudgment calculation method is appropriate in this case. *See* Ohio Rev. Code § 1343.03.